IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW F. PULCIPHER,                                  Case No. 2:13-cv-01060-SB

                              Petitioner,                           **FINDINGS AND**
          v.                                                        **RECOMMENDATION**

MARK NOOTH,

                              Respondent.

_____

**BECKERMAN, Magistrate Judge**.

        Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus

proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the habeas petition should

be denied.

## BACKGROUND

        On December 24, 2001, petitioner entered an apartment that Miguel Lopez-Pintor shared with

three roommates. Resp. Ex. 106 at 22. According to several witnesses, petitioner was carrying a

baseball bat, broke a table with the bat, and threatened the occupants of the apartment with the bat

while yelling "I hate Mexicans." Resp. Ex. 105 at 103-04; Resp. Ex. 106 at 12-18 & 28-29. Later that

Page 1 - FINDINGS AND RECOMMENDATION

evening, there was a second altercation between petitioner and several individuals in the parking lot of the apartment. Resp. Ex. 105 at 105-07 & 112-14; Resp. Ex. 107 at 20, 28-31 & 92.

On January 2, 2002, a grand jury returned an indictment charging petitioner with Burglary in the First Degree (three counts), Unlawful Use of a Weapon (two counts), Menacing (two counts), Intimidation in the Second Degree (one count), and Criminal Mischief (two counts). Resp. Ex. 102 at 1. While awaiting trial, petitioner contacted several individuals, including his girlfriend Elizabeth Lavender (aka Elizabeth Darrah), to persuade them to provide false testimony or to refuse to testify. *See* Resp. Ex. 106 at 76-78 & 108-12; Resp. Ex. 107 at 34-36 & 63-71; Resp. 108 at 6-8. As a result, on April 2, 2002, the grand jury charged petitioner with three counts of Tampering with a Witness. Resp. Ex. 102 at 6-7. On that same date, the grand jury charged Lavender with eight counts of witness tampering and three counts of bribery. Resp. Ex. 140 at 1-3. The same Deputy District Attorney ("DDA") represented the State of Oregon at all of the grand jury proceedings.

On April 17, 2002, petitioner's trial counsel moved for a continuance of the burglary trial on the basis that Lavender was unavailable as a witness because, as a result of the recent witness-tampering and bribery charges, she intended to invoke her Fifth Amendment right against self-incrimination. Resp. Ex. 104 at 7-8, 13 & 23-26. The DDA opposed the continuance. *Id.* at 9-10 & 14-23. The trial court denied the motion to continue, and the case proceeded to trial the following day. *Id.* at 28 & Resp. Ex. 105.

At trial, petitioner testified that he went to Lopez-Pintor's apartment because Lavender had accused Lopez-Pintor of trying to rape her. Resp. Ex. 107 at 41-43. Petitioner testified that, upon entering the apartment, he confronted Lopez-Pintor but did not threaten anyone with the bat. *Id.* at 53. He explained that during the subsequent altercation in the parking lot, he acted only to protect Lavender and her son from harm, and to prevent property damage. *Id.* at 51-52. When called to

Page 2 - FINDINGS AND RECOMMENDATION

testify, Lavender invoked her Fifth Amendment right against self-incrimination. Resp. Ex. 105 at

4-6 & 10. Immediately thereafter, the following exchange occurred:

> THE COURT: * * * The record will establish that Ms. Lavender is unavailable due to her decision to take the Fifth Amendment; so we won't need to bring her up.
>
> It sounds like you need –
>
> THE DEFENDANT: Hold up. I want to say what I want to say.
>
> THE COURT: Mr. Pulcipher, I am going to find you in contempt –
>
> THE DEFENDANT: No, don't you what nothing. You contempt me for –
>
> Fuck you, punk.
>
> I am looking at ten years here. That piece of shit right there scared my old lady into not testifying for me. She wants to testify. She wants to testify. She won't because he scared her into not to. She is scared of losing the kid. That is why she was up there crying like that.
>
> THE COURT: Mr. Pulcipher, just stay steady –
>
> THE DEFENDANT: I am not going to flip out. I am not going to have people tell me to shut up. That punk right there broke up my family. I don't care about this time. I have been in the penitentiary five times. He broke up my fucking family.
>
> THE COURT: Here is what we are going to do –
>
> THE DEFENDANT: Here is what we are going to do, nothing.
>
> THE COURT: This is important for you, not for me. I am going to stand down and give you a chance to talk to your lawyer. When we are talking, this gentleman is recording.
>
> THE DEFENDANT: I want it to be on the recorder. I want it to be fucking known there. That punk there, that piece of shit –
>
> Yeah, you bitch, you did that. Hey, I didn't fucking kick in no door.
>
> THE COURT: You know –

THE DEFENDANT: I tried to work with him on plea bargains. He wouldn't give me nothing. He is threatening nine and a half years. What am I supposed to do? This is my life. This ain't no – it ain't about Judge Upton or Deputy Steele or Martinez or [the DDA]. I am a fucking case number. This is my life.

\* \* \* \* \*

THE DEFENDANT: \* \* \* He just scared my only witness, the only person that really saw, into – what went down, into not testifying, because she is scared of losing the baby for doing so much time. That is the only reason. She didn't do nothing except for people to tell the truth. The people in the police reports lie. She told them, "Tell the truth." He's threatening more time and more charges on her if she testifies for me.

[DDA]: Judge, at this time I am not going to sit here and listen to Mr. Pulcipher make threats to me. I am done with this.

THE DEFENDANT: Who made a threat?

[DDA]: I have not said anything to his girlfriend. I am done with this.

\* \* \* \* \*

THE COURT: \* \* \* Mr. Ostrow,[1] I take it, sir, that you can – well, you may not be willing to answer this question, but if you are, that would be fine, since we are on the record.

Did you have a chance to advise Ms. Lavender of what she should do in this particular situation she was in?

MR. OSTROW: Regarding her Fifth Amendment rights? Absolutely, Judge.

THE COURT: Okay. The record will reflect that Ms. Lavender yesterday had the opportunity to make this decision and chose to think about it overnight about whether or not she would testify, and she had had counsel previously appointed. Mr. Ostrow was here patiently yesterday and made himself available this morning, and in both occasions, I did see, as he just indicated to me, his opportunity to talk with her and advise her. *There is no evidence before the Court that her decision to not testify was based on anything other than her own self-interest or at least her decision to plead the Fifth Amendment for fear of incriminating herself.*

*Id.* at 6-10 (emphasis added); *see also* Resp. Ex. 107 at 68.

---

[1] Attorney Leonard Ostrow was appointed to represent Lavender. Resp. Ex. 104 at 11.

On April 23, 2002, the jury found petitioner guilty of all charges in the burglary case (with the exception of one count of Unlawful Use of a Weapon, and one count of Intimidation in the Second Degree). Resp. Ex. 107 at 164-72 & Resp. Ex. 136. In a subsequent stipulated facts trial, petitioner was convicted of all three counts of witness tampering. Resp. Ex. 101 at 3. At the sentencing hearing, petitioner again accused the DDA of "scaring" Lavender into not testifying. Resp. Ex. 108 at 31. The court sentenced petitioner to a 364-month term of imprisonment. Resp. Ex. 101; Resp. Ex. 108 at 34-36; Resp. Ex. 140 at 4-6.[2] On May 13, 2002, Lavender pled guilty to three counts of witness tampering and one count of bribery. Resp. Ex. 140 at 4-10.

Petitioner filed a direct appeal alleging that the trial court abused its discretion in denying his motion for a continuance due to the unavailability of Lavender, and erred by refusing to give three requested jury instructions. Resp. Ex. 109. The Oregon Court of Appeals ultimately affirmed petitioner's conviction and sentence. *State v. Pulcipher*, 116 P.3d 951, 952 (Or. Ct. App. 2005), *vacated,* 195 P.3d 63, 63 (Or. 2008), *on remand*, 204 P.3d 852, 854, *adhered to as modified*, 209 P.3d 380, 380 (Or. Ct. App. 2009).

Petitioner sought state post-conviction relief raising numerous ineffective assistance of counsel ("IAC") claims. The post-conviction court denied relief. Resp. Ex. 144. On appeal, petitioner raised only three assignments of error: (1) trial counsel was ineffective in failing to object to the imposition of consecutive sentences on the witness tampering convictions; (2) trial counsel was ineffective in failing to object to the imposition of departure sentences; and (3) the PCR court's judgment violated state law because the court did not adequately set forth the basis for its decision. Resp. Exs. 145, 147. The Oregon Court of Appeals affirmed without opinion, and the Oregon

[2] Petitioner's term of incarceration includes a 52-month sentence he received in a third proceeding in which he was convicted of Theft in the First Degree, Fraudulent Use of a Credit Card, and two counts of Identity Theft. Resp. Ex. 101 at 8-9; Resp. Ex. 108 at 36-37.

Supreme Court denied review. *Pulcipher v. Nooth*, 290 P.3d 20 (Or. Ct. App. 2012), *rev. denied*,

296 P.3d 1275 (Or. 2013).

In the instant proceeding, petitioner raises the following two grounds for relief:

**Ground One:** Conviction obtained by a violation of the privilege against self-incrimination. Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant; Denial of effective assistance of counsel.

**Supporting FACTS * * * ** I was convicted by a jury that was prejudice of me. I threw a water pitcher at the district attorney in front of the jury. Some of jurors asked to be seated in other chairs away from me; I was not allowed to call my witnesses at trial; district attorney threatened to send one of my witnesses to prison if she testified on my behalf; My attorney failed to inform me of a time line for plea agreement and did not appeal the sentence when I asked him to.

**Ground Two:** Counsel failed to object at sentencing where the trial court failed [to] adjust criminal history score on two of the witness tampering convictions.

**Supporting FACTS * * * ** should have been shifted to "I" on the sentencing guidelines per the 400% rule for an upward departure.

Petition (ECF No. 2) at 4. In his supporting brief, petitioner raises additional due process and

ineffective assistance of counsel claims that he did not include in his habeas petition. Petitioner

argues that the DDA violated the Due Process Clause by tactically charging Lavender with witness

tampering, and then threatening her with an extensive prison sentence if she testified on petitioner's

behalf. Pet.'s Brief in Support (ECF No. 40) at 1. Additionally, petitioner argues that trial counsel

was ineffective in "fail[ing] to effectively challenge the prosecutor's manipulation of the system or

otherwise make an adequate record as to how [Lavender] was manipulated by the prosecution." *Id.*

at 2.

## DISCUSSION

Respondent moves the Court to deny habeas relief because petitioner's first ground for relief

(as alleged in the petition) is procedurally defaulted; the new grounds raised in petitioner's

Page 6 - FINDINGS AND RECOMMENDATION

supporting memorandum were not raised in his habeas petition, are procedurally defaulted, and lack merit; and the state court's rejection of his second ground for relief is entitled to deference.

## I.      GROUND FOR RELIEF ONE

As quoted above, in his first ground for relief petitioner alleges that (1) his conviction was obtained in violation of his right against self-incrimination; (2) the prosecution failed to disclose exculpatory evidence; (3) trial counsel was ineffective because he failed to inform petitioner of a "time line for [the] plea agreement" and failed to appeal his sentence; (4) the jury was biased; (5) he was not allowed to call his witnesses; and (6) the DDA threatened a witness. Respondent moves the Court to deny habeas relief on these allegations because they were not raised on direct appeal or on appeal from the denial of post-conviction relief.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A federal claim is procedurally defaulted if the petitioner does not fairly present his federal claims to the appropriate state courts at all appellate stages afforded under state law, and state procedural rules would now bar consideration of the claims. *Hurles v. Ryan*, 752 F.3d 768, 779-80 (9th Cir. 2014); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999). If a state prisoner procedurally defaults his federal claims, habeas relief is precluded absent a showing of cause and prejudice, or that the failure to consider his federal claims will result in a fundamental miscarriage of justice. *Hurles*, 752 F.3d at 780; *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

All of the claims raised in Ground One for Relief are procedurally defaulted because petitioner failed to raise them on direct appeal, or on appeal from the denial of post-conviction relief, and the time for doing so has expired. *See* ORS 138.071(1) & ORS 138.650(1). Petitioner has made

Page 7 - FINDINGS AND RECOMMENDATION

no attempt to provide a basis to excuse this procedural default. Accordingly, habeas relief should be denied as to those grounds for relief.

With respect to the due process and IAC claims petitioner raised for the first time in his memorandum, premised upon the prosecution's alleged manipulation of Ms. Lavender, it is undisputed that petitioner's new claims are procedurally defaulted due to petitioner's failure to raise the claims at the state post-conviction proceeding or on appeal therefrom.[3] Petitioner argues, however, that this procedural default is excused under the U.S. Supreme Court's holding in *Martinez v. Ryan*. This Court disagrees.

### A.    Procedurally Defaulted Due Process Claim

In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default *of a claim of ineffective assistance at trial*." 132 S. Ct. at 1315 (emphasis added); *see also Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1295 (9th Cir. 2013) (extending *Martinez* to defaulted claims of ineffective assistance of *appellate* counsel). The narrow holding in *Martinez* does not extend to defaulted claims other than ineffective assistance of trial or appellate counsel. *Pizzuto v. Ramirez*, 783 F.3d 1171, 1177 (9th Cir. 2015). Accordingly, to the extent that petitioner is alleging an independent due process claim (as opposed to an IAC claim premised upon trial counsel's failure to raise a due process objection), habeas relief should be denied because the due process claim is procedurally defaulted, and petitioner

---

[3] Although petitioner alleged in his petition that the prosecutor "threatened to send one of [petitioner's] witnesses to prison if she testified on [his] behalf," petitioner did not identify this as a due process claim. A responsive brief is not the proper method for raising a new ground for relief and, therefore, habeas relief should be denied for the independent reason that petitioner failed to include these claims in his petition. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *Wenger v. Coursey*, No. 2:11-cv-01502-KI, 2013 WL 5567076, at *2 n.1 (D.Or. Oct. 9, 2013); Rule 2(c)(1), Rules Governing Section 2254 Cases in the United States District Courts (requiring that the petition "specify all the grounds for relief available to the petitioner").

has failed to demonstrate a basis to excuse the default. Additionally, as set forth in the following discussion addressing ineffective assistance of counsel, habeas relief is not warranted in any event because there is no evidence that the DDA threatened or coerced Lavender to prevent her from testifying.

**B.      Procedurally Defaulted Ineffective Assistance of Counsel Claim**

1.      *Martinez* Test

In order to demonstrate "cause" sufficient to excuse the procedural default of an IAC claim under *Martinez*, petitioner must demonstrate "(1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial counsel claim'; and (4) state law *requires* that the claim 'be raised in an initial-review collateral proceeding.'" *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S.Ct. at 1320-21); *Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc); *see also Clabourne v. Ryan*, 745 F.3d 362, 377-78 (9th Cir. 2014).

In the instant proceeding, there is no dispute that a state post-conviction proceeding is the initial-review proceeding in Oregon for an IAC claim, and that Oregon law requires the IAC to be raised in that proceeding. *See* ORS 138.530(1)(a); *State v. Chase*, 624 P.2d 1100, 1101 (Or. Ct. App. 1981); *State v. Robinson*, 550 P.2d 758, 758 (Or. Ct. App. 1976). Accordingly, the Court need only consider prongs one and two of the *Martinez* test: (1) whether petitioner's procedurally defaulted IAC claim was substantial; and (2) whether post-conviction counsel was ineffective, under the standard announced in *Strickland*, for failing to raise the IAC claim on collateral review.

In order to prove substantiality, the underlying IAC claim must have "some merit." *Pizzuto*,

783 F.3d at 1179; *Hurles*, 752 F.3d at 781; *Clabourne*, 745 F.3d at 377. In other words, a claim is

"*insubstantial*" if "it does not have any merit or . . . is wholly without factual support." *Martinez*, 132

S.Ct. at 1319. Proof that post-conviction counsel was ineffective because he failed to raise the IAC

claim on collateral review requires a showing that post-conviction counsel's conduct fell below an

objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's

error, the result of the post-conviction proceeding would have been different. *Bell v. Cone*, 535 U.S.

685, 695 (2002); *Strickland v. Washington*, 466 U.S. 668, 687-88 (1987). In applying this test, there

is a strong presumption that trial counsel's representation was within the wide range of reasonable

professional assistance. *Strickland*, 466 U.S. at 689; *Hurles*, 752 F.3d at 778.

### 2.    Application of *Martinez* to Defaulted IAC Claim

Petitioner argues that trial counsel was ineffective because he failed to challenge the

prosecutor's conduct as violative of *Webb v. Texas*, 409 U.S. 95 (1972). In his supporting

memorandum, petitioner sets forth the factual basis of his claim, as follows:

> Two weeks before Mr. Pulcipher's case went to trial, the Washington County District
> Attorney obtained a secret indictment against Ms. Darrah. Exactly one week before
> the trial commenced, she was arraigned on the charges. Ms. Darrah's lawyer told her
> if she testified for Pulcipher and was later convicted on her own case, the prosecutor
> would strive to send her to prison for up to ten years. Although Darrah's change of
> plea was initially scheduled for April 22, 2002, on April 16, 2002 (two days before
> Mr. Pulcipher's trial was to begin), the plea was reset to the following month. Ms.
> Darrah plead guilty to three counts of tampering with a witness and one of bribing
> a witness.

Pet.'s Brief in Support at 15 (record citations omitted). Petitioner concludes that his conviction was

unconstitutionally obtained "[t]hrough the manipulation of timing and charges." *Id.* at 20.

In *Webb v. Texas*, the Supreme Court held that a trial judge violated the defendant's

fundamental due process right to present a defense when he "effectively drove [a] witness off the

Page 10 - FINDINGS AND RECOMMENDATION

stand" with a "lengthy and intimidating warning" that if the witness lied on the stand, the trial judge

would personally see to it that the witness was prosecuted for perjury. 409 U.S. at 97-98. The Court

explained:

> The trial judge gratuitously singled out this one witness for a lengthy
> admonition on the dangers of perjury. But the judge did not stop at warning the
> witness of his right to refuse to testify and of the necessity to tell the truth. Instead,
> the judge implied that he expected Mills to lie, and went on to assure him that if he
> lied, he would be prosecuted and probably convicted for perjury, that the sentence for
> that conviction would be added on to his present sentence, and that the result would
> be to impair his chances for parole. At least some of these threats may have been
> beyond the power of this judge to carry out. Yet, in light of the great disparity
> between the posture of the presiding judge and that of a witness in these
> circumstances, the unnecessarily strong terms used by the judge could well have
> exerted such duress on the witness' mind as to preclude him from making a free and
> voluntary choice whether or not to testify.

*Id.*

The Supreme Court has yet to apply the holding in *Webb* to a *prosecutor's* coercive or

threatening conduct. However, the Ninth Circuit has held that the conduct of prosecutors "is

unquestionably governed by *Webb*." *U.S. v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998); *see also*

*State v. Jones*, 747 P.2d 1013, 1016 (Or. Ct. App. 1987) (applying *Webb* to prosecutor's refusal to

grant witness use immunity). According to the Ninth Circuit, a defendant's constitutional rights are

implicated if the prosecutor "employs coercive or intimidating language or tactics that substantially

interfere with a defense witness' decision whether to testify." *Vavages*, 151 F.3d at 1190.

Assuming that *Webb* applies to the conduct of a prosecutor, there is no evidence in the state

record to support a finding that the DDA engaged in any type of coercive or intimidating tactics

effectively to drive Lavender off the stand. Although petitioner argues that the DDA "threatened that

[Lavender] would receive an extensive prison sentence if she was a witness for Mr. Pulcipher"

(Pet.'s Brief in Support at 1), he points to nothing in the state court record to support the conclusion

that the DDA spoke to either Lavender or her attorney regarding her decision whether to testify on

petitioner's behalf. The DDA denied doing so, and the trial court accepted this representation. Resp.

Ex. 105 at 9-10.

Moreover, the state court record reflects that Lavender invoked her Fifth Amendment right

against self-incrimination on the advice of counsel. *See United States v. Jaeger*, 538 F.3d 1227, 1232

(9th Cir. 2008) (concluding that trial judge did not effectively drive witness off the stand in part

because the trial court provided the witness an opportunity to consult with counsel before deciding

whether to testify). When the trial judge accepted Lavender's assertion of her right not to testify, the

judge (1) confirmed that appointed counsel had advised Lavender on her Fifth Amendment rights;

and (2) stated on the record that "[t]here is no evidence before the Court that [Lavender's] decision

to not testify was based on anything other than her own self-interest or at least her decision to plead

the Fifth Amendment for fear of incriminating herself." Resp. Ex. 105 at 10 & 24-25.

Indeed, at the subsequent state post-conviction proceeding, Lavender confirmed that she

invoked her Fifth Amendment right against self-incrimination upon the advice of counsel:

> (6)    While awaiting trial on the [witness tampering] charges, I was visited at the
>        WSH county jail by Andrew Pulcipher's attorney, Richard White, and;
>
> (7)    Mr. White subpoenaed me and asked if I would testify on behalf of Andrew
>        Pulcipher, however, before I agreed to, my attorney, Leonard Ostrow, came
>        into where Mr. White and I were meeting. Mr. Ostrow had some forceful
>        words with Mr. White and told Mr. White that he needed to get out of here
>        right now. Mr. Ostrow informed me that he did not give Mr. White
>        permission to speak with me and then Mr. Ostrow told me that if I testified
>        on behalf of Andrew, that I would incriminate myself and that I could
>        possibility [sic] go to prison for ten (10) years, and;
>
> (8)    Mr. Ostrow advised me that when I was called to testify, to plea [sic] the
>        fifth, which I did . . . .

Resp. Ex. 131 at ¶¶ 6-8. In a more recent affidavit, Lavender again does *not* attest that the DDA contacted her, or her attorney, in order to influence her decision whether to testify on petitioner's behalf. *See* Pet. Brief in Support, Ex. 1.

In sum, petitioner's claim that the DDA coerced or threatened Lavender into not testifying, in violation of *Webb v. Texas*, is "wholly without factual support" and lacks "some merit." *Webb* does not stand for the conclusion that a prosecutor violates due process simply by seeking a well-founded indictment against a witness, while also opposing the continuance of a related criminal proceeding in which the witness was called to testify. *See Jones*, 747 P.2d at 1016 (prosecutor's indictment of witness and refusal to grant the witness immunity, did not violate defendant's right to compulsory process); *Clark v. Thaler*, No. 3:08-CV-0722-O, 2009 WL 3614455, at *6-7 (N.D. Tex. Oct. 30, 2009) (rejecting *Webb* due process claim premised upon petitioner's assertion that extended inactivity on witness's indictment and its dismissal after trial demonstrated that the state obtained indictment to preclude witness from testifying); *Williams v. Woodford*, 384 F.3d 567, 600-03 (9th Cir. 2004) (prosecutor did not engage in misconduct by bringing well-founded charges against defense witness, and refusing to grant the witness use immunity).

Petitioner's due process argument lacks merit and, therefore, post-conviction counsel's failure to allege that trial counsel was ineffective for failing to raise the due process claim did not fall below an objective standard of reasonableness. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 & 1161 (9th Cir. 2012) (counsel not ineffective for failing to raise meritless claim). Accordingly, petitioner's procedural default of his ineffective assistance of trial counsel claim should not be excused under *Martinez,* and habeas relief should be denied on the basis that petitioner's IAC claim is procedurally defaulted.

///

Page 13 - FINDINGS AND RECOMMENDATION

3.     Request for Evidentiary Hearing

Finally, petitioner's request for an evidentiary hearing on this issue should be denied. Although the Ninth Circuit has held that the restrictions on evidentiary hearings set forth 28 U.S.C. § 2254(e)(2) do not bar a hearing to allow a petitioner to show "cause" under *Martinez*, petitioner's request should be denied because the record is fully developed, and petitioner has not identified what additional evidence he seeks to develop. *Woods v. Sinclair*, 764 F.3d 1109, 1138 n.16 (9th Cir. 2014) (leaving to the district court's discretion whether to hold an evidentiary hearing on the petitioner's *Martinez* claim); *Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002) (affirming district court's denial of evidentiary hearing in part because the petitioner "failed to show what more an evidentiary hearing might reveal of material import"); *cf. Dickens*, 740 F.3d at 1321 (district court may hold evidentiary hearing on petitioner's *Martinez* claim "to the extent necessary").

## II.     **GROUND FOR RELIEF TWO**

Petitioner also alleges that trial counsel was ineffective because he failed to object to the consecutive 60-month sentences imposed on the three witness tampering counts because they violate Oregon law governing consecutive sentencing. Resp. Ex. 120 at 6; Resp. Ex. 143 at 10-11; *See* OAR 213-012-0020(2)(a) (the "shift to column I rule"); OAR 213-012-0020(2)(b) ("200% rule"); and OAR 213-008-0007(3) ("400% rule").[4] Petitioner did not address this ground in his supporting memorandum. At the state post-conviction proceeding, however, petitioner argued that he should have been sentenced to 60 months on the initial witness tampering charge, and 90 days for each consecutive charge. On appeal from the denial of post-conviction relief, petitioner acknowledged that his sentencing argument fails if his convictions for witness tampering involve different victims. *See*

---

[4] For an explanation of these state sentencing rules, see *State v. Davis*, 847 P.2d 834, 838-40 & n.16 (Or. 1993).

Resp. Ex. 145 at 13-14 (citing OAR 213-012-0020(5) & OAR 213-008-0007(3) (stating that the 200% rule and the 400% rule do not apply to consecutive sentences for crimes involving different victims). The post-conviction court rejected petitioner's challenge to his consecutive sentences, holding that "[a]lthough the sentences are very lengthy, they are legal." Resp. Ex. 144.

This Court is bound by the state post-conviction court's conclusion that petitioner's sentences do not violate Oregon law. *See Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("state court has the last word on the interpretation of state law"). Consequently, trial counsel was not ineffective for failing to challenge the consecutive sentences imposed for witness tampering. *See Sexton*, 679 F.3d at 1157, 1161 (counsel not ineffective for failing to raise meritless claim). Petitioner, therefore, has failed to sustain his burden to demonstrate that the state courts' rejection of his IAC claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, federal habeas relief is not warranted. *See* 28 U.S.C. § 2254(d)(1) (state prisoner shall not be granted habeas relief with respect to any claim adjudicated on the merits unless the adjudication resulted in a decision that is contrary to, or unreasonable application of clearly established federal law).[5]

## CONCLUSION

Based on the foregoing, petitioner's habeas petition (ECF No. 2) should be DENIED, with prejudice. Additionally, a certificate of appealability should be denied on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

///

///

---

[5] Respondent also asserts that, to the extent ground for relief two is premised upon trial counsel's failure to raise an objection under the "400% rule," the claim is procedurally defaulted because petitioner did not raise this discrete claim to the post-conviction court. The Court agrees. In any event, as discussed above, the claim also lacks merit. *See* 28 U.S.C. § 2254(b)(2) (unexhausted claim may be denied on the merits).

Page 15 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 24th day of June, 2015.

STACIE F. BECKERMAN
United States Magistrate Judge

Page 16 - FINDINGS AND RECOMMENDATION